IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| AKBAR POONAWALA, | } |
| Plaintiff, | } |
| v. | } Case No. 4:06-CV-1990-RDP |
| AIG CLAIM SERVICES, INC., et al., | } |
| Defendants. | } |

**MEMORANDUM OPINION**

The court has before it the partial Motion to Dismiss (Doc. # 8) filed by Defendants AIG Claim Services, Inc. ("AIG"), National Union Fire Insurance Company of Pittsburg, PA ("NUFIC") and Bank of America ("BOA") on October 30, 2006. The motion requests dismissal, pursuant to Federal Rule of Civil Procedure 12(b)(6), of Counts I and II as to NUFIC and BOA and all counts as to AIG. The motion does not seek dismissal of Count III of the complaint, which is only alleged against NUFIC and BOA. The motion was under submission, without oral argument, as of November 10, 2006. For the reasons outlined below, the court finds that the motion is due to be granted.

**I.      Standard of Review**

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint for failure to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). A court may dismiss a complaint under Rule 12(b)(6) only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

In deciding a Rule 12(b)(6) motion, the court must "accept all well-pleaded factual allegations in the complaint as true and construe the facts in a light most favorable to the non-moving party." *Dacosta v. Nwachukwa*, 304 F.3d 1045, 1047 (11th Cir. 2002) (citing *GJR Invs., Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1367 (11th Cir. 1998)). "[U]nsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal." *Dalrymple v. Reno*, 334 F.3d 991, 996 (11th Cir. 2003) (citing *Marsh v. Butler County*, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001) (en banc)). Further, "[a] complaint may not be dismissed because the plaintiff's claims do not support the legal theory he relies upon since the court must determine if the allegations provide for relief on *any* possible theory." *Brooks v. Blue Cross & Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (emphasis in original). Nevertheless, conclusory allegations, unwarranted deductions of facts, or legal conclusions masquerading as facts will not prevent dismissal. *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002); *see Kane Enters. v. MacGregor (USA) Inc.*, 322 F.3d 371, 374 (5th Cir. 2003) ("[A] plaintiff must plead specific facts, not mere conclusional allegations, to avoid dismissal for failure to state a claim. We will thus not accept as true conclusory allegations or unwarranted deductions of fact.") (internal citations omitted); *Kirwin v. Price Commc'ns. Corp.*, 274 F. Supp. 2d 1242, 1248 (M.D. Ala. 2003) ("[A]lthough the complaint must be read liberally in favor of the plaintiff, the court may not make liberal inferences beyond what has actually been alleged."), *aff'd in part*, 391 F.3d 1323 (11th Cir. 2004).

## II.     Relevant Facts as Alleged in Plaintiff's Complaint

Plaintiff was insured under an insurance policy (hereinafter referred to as "the Policy") issued by NUFIC which provides benefits for "total disability." (Doc. # 1, Count I ¶ 2). AIG was the claims administrator for the Policy. (Doc. # 1, Count I ¶ 6).

On December 9, 2005, Plaintiff was shot in the head and abdomen during the commission of a robbery. (Doc. # 1, Count I ). Thereafter on March 14, 2006, Plaintiff filed a claim for disability benefits under the Policy. (Doc. # 1, Count I ¶ 4). On June 28, 2006, Plaintiff was notified that he did not meet the definition of "total disability" set forth in the Policy and that therefore, his claim was denied:

> "After a careful review of the information received, we have determined that we must decline payment of Mr. Akbar's claim as he did not suffer a loss of both hands or feet; or loss of one hand and one foot; loss of sight in both eyes; Hemiplegia; Paraplegia; or Quadriplegia as defined in this policy. Rather the injuries your client received were pain on the right side of the face, a right shattered mandible and absence of sensation with Trigminil Neuralgia. Therefore, Permanent Total Disability Benefits are not payable for this loss."

(Doc. # 1, Count I ¶ 5).

Plaintiff admits that he does not meet the Policy definition of "total disability," but he maintains that he nonetheless meets the definition of "total disability" adopted by Alabama courts. (Doc. # 1, Count I ¶ 9). Plaintiff never received a copy of the Policy prior to his disability. (Doc. # 1, Count I ¶ 10).

Plaintiff's October 3, 2006 complaint alleges state law claims for breach of contract and bad faith denial of benefits against Defendants AIG and NUFIC (Counts I and II) and fraud against

Defendants NUFIC and BOA (Count III).[1]  Defendants have moved for dismissal of all counts as to AIG and Counts I and II as to NUFIC. (Doc. # 8).[2]  Defendants' motion does not seek dismissal of Count III. (Doc. # 8).

### III. Claims Against AIG

With respect to Plaintiff's breach of contract and bad faith claims against claims administrator AIG, Defendant argues - and Plaintiff does not dispute - that AIG was not a party to the Policy at issue here and that therefore, there exists no contract between Plaintiff and AIG.[3]  Under Alabama law, Plaintiff cannot maintain a breach of contract claim against AIG with whom he had not contracted. *Employee's Benefit Association v. Grissett*, 732 So. 2d 968, 975 (Ala. 1998) (holding that in order to establish a breach of contract, a plaintiff must prove, among other things, the existence of a valid contract binding the parties in the action).  The lack of a contract between Plaintiff and AIG is also fatal to Plaintiff's bad faith claim against AIG because (1) breach of contract is a prerequisite to bad faith and (2) Alabama has refused to extend the tort of bad faith to third-party administrators.  *State Farm Fire & Cas. Co. v. Slade*, 747 So. 2d 293, 304 (Ala. 1999)

---

[1] It is important to note that although Plaintiff alleges that his benefits were improperly denied, this is not an ERISA case. (Doc. # 11, at 8).

[2] Although Defendants' reply in support of its motion to dismiss asserts that "Plaintiff does not dispute that he did not state a claim for breach of contract against BOA . . . . [or] a claim for bad faith against BOA . . . . [and therefore] BOA should be dismissed from Counts I and II of the action for failure to state a claim," (Doc. # 12, at 2), the court notes that Plaintiff's complaint does not allege Counts I and II against BOA.

[3] Defendant's motion attaches the Policy as an exhibit. (Doc. # 8, Ex. 1).  In an action alleging causes of action related to a contractual agreement, the contract is considered part of the pleadings and does not constitute material outside the pleadings requiring conversion of a Rule 12 motion to a Rule 56 motion for summary judgment. *See Homart Dev. Co. v. Sigman*, 868 F.2d 1556, 1561-1562 (11th Cir.1989).

(holding that in order to establish a claim for bad faith, a plaintiff must prove, among other things, an insurance contract between the parties and a breach thereof by the defendant); *Lignon Furniture Co. v. O.M. Hughes Ins. Inc.*, 551 So. 2d 283, 285 (Ala. 1989) (refusing to recognize breach of insurance contract and bad faith as valid causes of action against agents, adjusters and third-party administrators).  Accordingly, the court is persuaded by AIG's unrefuted arguments for dismissal of the breach of contract and bad faith claims against it.

IV.     **Breach of Contract and Bad Faith Claims Against NUFIC**

Although Plaintiff has alleged both breach of contract and bad faith against NUFIC, a claim of bad faith failure to pay an insurance claim requires a showing, among other things, of "an insurance contract between the parties and a breach thereof by the insurer." *State Farm Fire and Cas. Co. v. Slade*, 747 So. 2d 293, 304 (Ala. 1999).  Accordingly, the court's analysis of Counts I and II (and the extent to which those state a claim against NUFIC) necessarily centers on the question of whether Plaintiff has stated a claim for breach of contract.  If he has not, dismissal is appropriate as to both his breach of contract and bad faith claims against NUFIC.  *Nat'l Savings Life Ins. Co. v. Dutton*, 419 So. 2d 1357, 1362 (Ala. 1982) ("[I]n order for a plaintiff to make out a prima facie case of bad faith refusal to pay an insurance claim, the proof offered must show that the plaintiff is entitled to a directed verdict on the contract claim and, thus, entitled to recover on the contract claim as a matter of law.").[4]

In order to prove a breach of contract, a plaintiff must establish the following:  1) the existence of a valid contract binding the parties in the action; 2) his own performance under the

---

[4] Defendant points out that breach of contract is a requisite element of both "normal" and "abnormal" bad faith claims, both of which are alleged by Plaintiff here. (Doc. # 8, at 5-6).

contract; 3) defendant's non-performance; and 4) damages. *See State Farm Fire and Cas. Co. v. Slade*, 747 So. 2d 293, 303 (Ala. 1999). NUFIC argues - and Plaintiff apparently does not dispute - that he has failed to perform under the contract because he does not meet the Policy definition of total disability which requires "a loss of both hands or feet; or loss of one hand and one foot; loss of sight in both eyes; Hemiplegia; Paraplegia; or Quadriplegia." (Doc. # 8, Ex. 1). Instead, Plaintiff asks this court to disregard the Policy's "overly strict and unconscionable" definition of total disability and interpret the Policy in accordance with the broader definition of disability under Alabama law. (Doc. # 11). Plaintiff further claims that the Policy's definition of disability is not enforceable because he did not receive a copy of it prior to his disability.

It is well-settled that, in the absence of a statutory provision to the contrary, insurance companies have the right to limit their liability and to write policies with narrow coverage. *Shrader v. Employers Mut. Cas. Co.*, 907 So. 2d 1026 (Ala. 2005); *St. Paul Mercury Ins. Co. v. Chilton-Shelby Mental Health Center*, 595 So. 2d 1375 (Ala. 1992). That the Alabama Supreme Court has, in the past, defined "total disability" as the "inability to substantially perform the duties of any substantially gainful occupation for which he is qualified by training, education or experience" *Mutual Life Insurance Company of New York v. Danley*, 5 So.2d 743, 747 (Ala. 1941), without requiring "absolute helplessness" *Jefferson Standard Life Ins. Co. v. Simpson*, 153 So. 198, 200 (Ala. 1934), does not render the Policy's definition of "total disability" unconscionable in this case. Not only has that same court made clear that insurers *are allowed* to write coverage narrowly while courts are prohibited from rewriting policy language to provide coverage not intended by the parties, *Altiere v. Blue Cross & Blue Shield of Alabama*, 551 So. 2d 290, 292 (Ala. 1989), but the particular definition contained in the Policy here is simply not inconsistent with the Alabama Supreme Court's

6

general pronouncements about "total disability." As Defendant points out, the second prong of the Policy's definition of "permanently totally disabled/permanent total disability" encompasses the idea that absolute helplessness is not required:

> the Insured [must be] permanently unable to perform the material and substantial duties of any occupation for which he or she is qualified by reason of education, experience or training. However, with respect to an Insured for whom an occupational definition of Permanently Totally Disabled/Permanent Total Disability is not appropriate, Permanently Totally Disabled/Permanent Total Disability means, as used in this Rider, that the Insured is permanently unable to engage in any of the usual activities of a person of like age and sex whose health is comparable to that of the Insured immediately prior to the accident.

(Doc. # 8, Ex. 1). Thus, the court cannot conclude that the Policy's definition of "total disability" is unconscionable under Alabama law.[5]

Moreover, Plaintiff never disputes that NUFIC has the right to narrowly define the coverage provided to him. Rather, he argues that NUFIC's failure to provide him with a copy of the Policy estops NUFIC from asserting its narrow coverage "exclusion" or definition of "total disability." (Doc. # 11). Plaintiff's argument misses the mark. Although Plaintiff is correct that Alabama law

---

[5] Plaintiff's reliance on the "reasonable expectations" doctrine is also unavailing. Although the Alabama Supreme Court has stated that "when . . . provisions [are] reasonably subject to different constructions, one favorable to the insurer and one favorable to the insured, the construction favorable to the insured shall prevail . . . [such that the] insured is entitled to the protection which he may reasonably expect from the terms of the policy he purchases," *Aetna Casualty & Surety Co. v. Chapman*, 200 So. 425, 426-27 (1941), the court also has clarified that "it is equally important that the contract made by the parties shall prevail, and no new contract be interpolated by construction," *State Farm Fire & Cas. Co. v. Slade*, 747 So. 2d 293, 311 (1999). Accordingly, "[p]rovisions clearly disclosing their real intent are not to be given a strained construction to raise doubts where none reasonably exist." *Slade*, 747 So. 2d at 311. In this case, Plaintiff has not alleged that the definition of "total disability" is ambiguous and the court finds no ambiguity to consider. Accordingly, Plaintiff's expectation that his circumstances should constitute total disability under the Policy is "limited by the unambiguous term[] of the[] policy and therefore [his] expectations of coverage [are] not [] objectively reasonable." *Slade*, 747 So. 2d at 312. Simply because Plaintiff had an expectation of coverage which was not met does not render the Policy unconscionable.

does set forth a provision for delivery of an insurance policy to the insured, ALA. CODE § 27-14-19 ("every policy shall be mailed or delivered to the insured or to the person entitled thereto within a reasonable period of time after its issuance"), he fails to recognize that the general delivery requirement of Section 27-14-19 is limited by a more particular rule governing delivery of blanket policies. ALA. CODE § 27-1-6 (1975)("Provisions of this title relative to a particular kind of insurance, a particular type of insurer or a particular matter shall prevail over provisions in this title relating to insurance in general, insurers in general or such matter in general."). Section 27-20-6 provides that an insurer is *not required* to deliver to each member of the insured group a copy of a "Blanket Accident Insurance Policy" like the one at issue in this case. ALA. CODE § 27-20-6 (1975) ("An individual application shall not be required from a person covered under a blanket disability policy or contract, nor shall it be necessary for the insurer to furnish each person a certificate."). Accordingly, as NUFIC was not required to mail or deliver a copy of the Policy to Plaintiff, Plaintiff's allegation that he did not receive a copy of the Policy does not estop NUFIC from asserting particular coverage conditions or definitions.

Even assuming as true the allegations in Plaintiff's complaint, the court finds no basis for Plaintiff's breach of contract claim (and therefore his bad faith claim) against NUFIC. Plaintiff has admitted that he failed to satisfy the requirements of the Policy, and his arguments regarding unconscionability and estoppel fail as a matter of law.[6] Accordingly, NUFIC's motion to dismiss is due to be granted.

---

[6] In a last-ditch effort to persuade this court that the Policy language at issue in this case is unconscionable, Plaintiff relies on Eleventh Circuit law condemning unduly restrictive limitations in disability insurance policies under ERISA. *Helms v. Monsanto Co.*, 728 F.2d 1416, 1420 (11th Cir. 1984). Although Plaintiff's argument may be persuasive in an ERISA case, it is simply not relevant in this non-ERISA case brought solely under Alabama common law.

## V. Conclusion

For the reasons outlined above, the court finds that Defendants' motion to dismiss is due to be granted. A separate order will be entered.

**DONE** and **ORDERED** this ___20th___ day of November, 2006.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE